UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AVIDYNE CORPORATION,

        Plaintiff,

  v.

L-3 COMMUNICATIONS AVIONICS
SYSTEMS, INC., f/k/a B.F. GOODRICH
AVIONICS SYSTEMS, INC.,

        Defendant.

C.A. No. 05-11098  GAO

**MEMORANDUM OF LAW IN SUPPORT OF**
**EMERGENCY MOTION TO MODIFY SCHEDULING ORDER**

Pursuant to Fed. R. Civ. P. 26(a)(2)(C), plaintiff Avidyne Corporation ("Avidyne") respectfully submits this memorandum of law in support of its Emergency Motion to Modify Scheduling Order.

**BASIS FOR EMERGENCY FILING**

It has become clear that the parties fundamentally disagree on how to interpret the Scheduling Order presently governing this litigation.  Absent intervention by the Court, Avidyne -- the party accused of patent infringement -- will be forced to produce all of its expert reports on September 18, 2006 -- before the patent holder articulates its theory of infringement or produces any of its reports and almost three months before the close of fact discovery.  If Avidyne holds this issue in abeyance until the September 11, 2006 Status Conference, it risks leaving itself only one week to prepare its expert reports.

10089741.1

Avidyne's counsel attempted to resolve this dispute in a conference call with counsel for defendant L-3 Communications Avionics Systems, Inc. ("L-3") on August 22, 2006, but that effort was unsuccessful. *See* Declaration of Jason C. Kravitz (Exhibit 1 hereto) at ¶¶ 2-3.

## BACKGROUND

In May 2005, Avidyne filed a Complaint for Declaratory Judgment of Non-Infringement and Invalidity of U.S. Patent No. 5,841,018 (the "'018 Patent"). L-3 asserted a counterclaim for patent infringement.

The Court conducted a Local Rule 16.1 Scheduling Conference on January 31, 2006. The Court adopted the schedule (and phraseology) proposed by the parties and entered an Order setting forth, *inter alia*, the following deadlines:

| | |
|---|---|
| Initial Disclosures | 2/2/06 |
| Designation of Plaintiff's Experts: | 8/4/06 |
| Designation of Defendant's Experts: | 8/18/06 |
| Opening Markman Briefs: | 9/16/06 |
| Opposition Markman Briefs: | 9/27/06 |
| Markman Hearing: | 10/11/06 |
| Fact Discovery Completed: | 9/30/06 |
| Expert Discovery Completed: | 12/30/06 |

While the Court also scheduled a Status Conference for July 6, 2006, that conference was postponed to give the parties an opportunity to mediate their dispute. The parties attended a mediation session on July 31, 2006, but they were unable to settle the case. As such, the Court rescheduled the Status Conference for September 11, 2006.

Because the litigation had effectively been "on hold" pending mediation, it became clear after the settlement efforts failed that the parties would need to seek leave to extend some or all of the applicable deadlines. Accordingly, Avidyne filed an Unopposed Motion Extending Dates of the Trial Schedule on August 3, 2006. In this motion, Avidyne -- with L-3's consent -- proposed the following new deadlines:

| | |
|---|---|
| Designation of Plaintiff's Experts | 9/18/06 |
| Designation of Defendant's Experts | 10/2/06 |
| Fact Discovery Completed | 12/1/06 |
| Expert Discovery Completed | 2/13/07 |

Avidyne copied the pertinent language from the parties' original Local Rule 16.1 joint submission (which the Court had adopted in its January 31, 2006 Scheduling Order) without fully considering its potentially ambiguous terminology. Avidyne's counsel did not believe that any expert *reports* would be due on September 18,[1] and Avidyne's counsel certainly did not believe that Avidyne -- as the party being accused of infringement -- would be expected to produce expert reports before receiving L-3's expert reports on the issues of infringement and damages. On reflection, Avidyne's counsel should not have used the phrase "Designation of Plaintiff's Experts" in its motion.

---

[1] Rule 26(a)(2) and LR 26.4 reference expert "disclosure" rather than "designation." Avidyne's counsel believed in good faith that the September 18 and October 2 "designation" deadlines required only the *identification* of expert witnesses. This belief was (and is) supported by the fact that: (1) both the Federal Rules and the Local Rules permit the parties to stipulate to a schedule for the disclosure of expert reports, absent direction from the Court; and (2) the Scheduling Order provided almost *five months* of "expert discovery" after the date for "Designation of Plaintiff's Experts" -- far in excess of what the parties would reasonably need to take expert depositions. Avidyne's counsel believed that expert reports would be due at some point prior to the expiration of the five-month period prescribed for expert discovery. *See* Exh. 1 hereto at ¶ 7.

Adopting the language submitted by the parties, the Court entered an Amended Scheduling Order that provides for "Designation of Plaintiff's Experts" on September 18, 2006 and "Designation of Defendant's Experts" on October 2, 2006. The same Order provides that fact discovery closes on December 1, 2006 and expert discovery closes on February 13, 2007.

Avidyne's counsel takes full responsibility for using inartful language in its proposed order. However, L-3 is seeking to exploit this inartful drafting for the purpose of inverting the conventional (and logical) sequence of litigation, which dictates that the party bearing the burden of proof at trial serves its expert report(s) first. Indeed, as detailed below, L-3 maintains that -- because Avidyne is the nominal plaintiff in this action for declaratory judgment -- Avidyne must tender its expert reports before L-3. This position is contrary to case law, defies common sense, and -- if accepted -- will lead to the preparation of meaningless expert reports.

## ARGUMENT

Attempting to exploit Avidyne's inartfully drafted motion, L-3 contends that Avidyne -- the party accused of patent infringement in this action -- should be forced to produce its expert reports before L-3 -- the patent holder -- produces its reports. This contention is contrary to authority from the Federal Circuit, treatises, and district courts and also flies in the face of common sense.

Avidyne is the plaintiff in this action because it filed a Complaint for Declaratory Judgment of Non-Infringement and Invalidity. However, it is well settled that declaratory judgment actions do not affect the burden of proof in patent litigation. Indeed, as one seminal treatise notes:

> In patent, copyright, and trademark cases, courts have generally recognized that any role reversal occasioned by declaratory relief should not shift the burden of proof from the manner in which it would be assigned in a coercive infringement suit. In general, the holder bears the burden of proving the

4

> validity of the patent, copyright, or trademark and that some specific activity or product is infringing or would infringe. If the burden of proof is shifted in these declaratory judgment relief actions, the alleged infringer would be forced to prove a negative, that no conceivable activity could infringe on any of the holder's rights. Rather, when declaratory relief actions are prompted by a specific threat made by the holder [citation omitted], the holder is simply put to its proof.

12 James Wm. Moore et al., Moore's Federal Practice § 57.62[2][d] (3d ed. 1997).

The Federal Circuit expressly credited the foregoing section from *Moore's* in the context of a discussion about declaratory judgment counterclaims. *See Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) (citing 12 Moore's Federal Practice § 57.62[2][d] (3d ed. 1997)). Indeed, the Federal Circuit has repeatedly made clear that "the burden always is on the patentee to show infringement." *See, e.g., Under Sea Industries, Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987). Thus, in a typical patent infringement declaratory judgment case where the declaratory plaintiff seeks a holding of non-infringement, the patent holder retains the burden of proof despite being the nominal defendant. *See Glenayre Elecs., Inc. v. Jackson*, 2003 U.S. Dist. LEXIS 2332, *47 (N.D. Ill. 2003); *see also MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 769-770 (D. Md. 2003) (where the affirmative issue to be determined in a declaratory judgment action is infringement, the patent holder bears burden of proof).[2]

In light of the foregoing, it cannot reasonably be disputed that L-3, as the patent holder, bears the burden of proof on the questions of infringement and damages. As such, it would be

---

[2] This principle is not limited to patent cases. *See, e.g., John Morrell & Co. v. United Food and Commercial Workers Int'l Union, AFL-CIO*, 825 F. Supp. 1440, 1450 (D.S.D. 1993) ("The burden does not shift simply because retirees are defendants in this declaratory judgment action"; "ultimate burden of proof remains on the defendants") (citing *Board of Regents of Univ. of Nebraska v. Dawes*, 522 F.2d 380, 383 n.9 (8th Cir. 1975) (burden of proof in action under Equal Pay Act rested on defendant class even though University initiated the declaratory judgment action)).

illogical (and arguably impossible) for Avidyne to produce a meaningful expert report to support its non-infringement position before L-3 produces a report in support of its infringement position. Avidyne cannot be expected to respond to arguments before they are made. This is particularly true where, as here, the patentee refuses to state which claims it is asserting against the alleged infringer. *See* Exh. 1 hereto at ¶ 5.

L-3's position on the sequence of expert discovery becomes even more strained when one considers the issues of invalidity and damages. Under L-3's interpretation of the Scheduling Order, Avidyne must produce a report from a damages expert before L-3 has even articulated its theory of infringement, let alone its theory of damages. Incredibly, L-3 maintains this position despite its refusal to identify all of the claims it is asserting against Avidyne. *Id.* Moreover, L-3 would have Avidyne produce an expert report in support of its invalidity position *before L-3 has even identified the claims at issue in the case.* L-3 apparently believes that Avidyne should be forced to offer opinions concerning the invalidity of claims that may not even be relevant to this action.

The folly of L-3's argument is further highlighted by the timing of the expert disclosures vis-à-vis the other deadlines in the Scheduling Order. L-3 would have Avidyne produce a report from its damages expert on September 18 -- four months before the close of fact discovery and long before Avidyne will have an opportunity to review L-3's financial records (many of which have yet to be produced)[3] or to depose L-3's Chief Financial Officer. If adopted, L-3's interpretation of the Scheduling Order would force Avidyne's experts to prepare meaningless and unsupported reports, contrary to the express language of Rule 26(a)(2)(B), which provides that expert reports "shall contain a complete statement of all opinions to be expressed and the

basis and reasons therefore. . . ." Indeed, how can Avidyne's experts offer "a complete statement of all opinions to be expressed" at trial until they know what opinions L-3 intends to offer in support of its infringement and damages positions?

In short, L-3's unreasonable interpretation of the Scheduling Order wilts under scrutiny. Avidyne respectfully requests that the Court modify the Scheduling Order to require that: (1) the party bearing the burden of proof at trial on a particular issue must serve its expert report on that issue on a date certain; and (2) the party without the burden of proof on a particular issue will respond to the report within 30 days. Avidyne also respectfully suggests that expert reports should not be due until after the close of fact discovery. Finally, Avidyne respectfully requests that the Court require L-3 to identify the claims being asserted in this action at least thirty days prior to the commencement of *Markman* briefing.

Avidyne proposes the following modified schedule:

### AVIDYNE'S PROPOSED SCHEDULING ORDER

| | |
|---|---|
| Fact Discovery to Be Completed By: | 12/4/06 |
| L-3 To Identify All Claims Being Asserted By: | 9/8/06 |
| Opening Markman Briefs (filed simultaneously) Due: | 10/13/06 |
| Responsive Markman Briefs (filed simultaneously) Due: | 10/27/06 |
| Markman Hearing: | To Be Scheduled By Court |
| Expert Reports of Party With Burden of Proof Due: | 1/5/07 |
| Responsive Expert Reports Due: | 2/5/07 |
| Expert Depositions to Be Completed By: | 3/23/07 |

---

[3] *See* Exh. 1 hereto at ¶ 6.

**CONCLUSION**

For the foregoing reasons, Avidyne respectfully requests that the Court modify the Scheduling Order consistent with the deadlines proposed herein.

Dated: August 23, 2006

/s/ Maia. H. Harris
Jason C. Kravitz, BBO No. 565904
Maia H. Harris, BBO No. 648208
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: 617-345-1000
Fax: 617-345-1300

Attorneys for Plaintiff Avidyne Corporation

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AVIDYNE CORPORATION,

          Plaintiff,

v.

L-3 COMMUNICATIONS AVIONICS
SYSTEMS, INC., f/k/a B.F. GOODRICH
AVIONICS SYSTEMS, INC.,

          Defendant.

C.A. No. 05-11098 GAO

## DECLARATION OF JASON C. KRAVITZ
## IN SUPPORT OF EMERGENCY MOTION TO MODIFY SCHEDULING ORDER

I, Jason C. Kravitz, do depose and state as follows:

1. I am counsel for plaintiff Avidyne Corporation ("Avidyne") in these proceedings.

2. After realizing that the parties had a fundamental disagreement about the interpretation of the Court's Scheduling Order, my colleagues and I arranged for a conference call between Avidyne's counsel and counsel for defendant L-3 Communications Avionics Systems, Inc. ("L-3"). The call took place on August 22, 2006.

3. During the call, I explained that I perceived ambiguities in the Scheduling Order and that I wished to see if we could resolve the matter without having to involve the Court. Specifically, I explained that -- in my view -- it did not make sense to have the nominal "plaintiff" (Avidyne) produce expert reports on issues like infringement and damages prior to L-3's production of its reports, given that L-3 bears the burden of proof on those issues. I asked L-3's counsel for his agreement on this seemingly straightforward point, but he refused.

4. L-3's counsel explained that -- because Avidyne "agreed to go first" -- he would under no circumstances be willing to deviate from that sequence. L-3's counsel explained that

10091206.1

he disagreed with the proposition that L-3 bears the burden of proof of infringement in this case, as Avidyne is the plaintiff seeking declaratory relief.

5.  During the call, I asked L-3's counsel if he would identify all of the claims L-3 is asserting against Avidyne in this action. L-3's counsel explained that he was unable to do so at this time, although he confirmed that claims 1 and 16 were being asserted.

6.  While L-3 has produced some documents to Avidyne, including certain financial records, absent even the identification of which claims Avidyne allegedly infringes, it is clear that Avidyne will require more detailed information before its damages and non-infringement experts can reasonably be expected to formulate opinions in this action.

7.  Although I was not personally involved in the drafting of the recent motion to adjust the existing scheduling deadlines, I am aware that Avidyne's counsel believed in good faith that the September 18 and October 2 "designation" deadlines required only the *identification* of expert witnesses. This belief was (and is) supported by the fact that: (1) both the Federal Rules and the Local Rules permit the parties to stipulate to a schedule for the disclosure of expert reports, absent direction from the Court; and (2) the Scheduling Order provided almost five months of expert discovery after the date for "Designation of Plaintiff's Experts" -- far in excess of what the parties would reasonably need to take expert depositions. Avidyne's counsel believed that expert reports would be due at some point prior to the expiration of the five-month period prescribed for expert discovery.

8.  The statements made herein are made on personal knowledge and belief, unless otherwise indicated.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of August, 2006.

_____
Jason C. Kravitz

2