IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AVIDYNE CORPORATION, a Delaware corporation, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Civil Action No. 05-11098 GAO |
| L-3 COMMUNICATIONS AVIONICS SYSTEMS, INC., f/k/a B. F. GOODRICH AVIONICS SYSTEMS, INC., a Delaware corporation, | ) ) ) ) ) | |
| Defendant/Counter-Plaintiff | ) ) | |

**DEFENDANT L-3 COMMUNICATIONS AVIONICS SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE ANY TESTIMONY OF DR. MYRON KAYTON, OR ANY OTHER WITNESS ON BEHALF OF PLAINTIFF AVIDYNE CORP., ON THE ISSUES OF OBVIOUSNESS AND §112 INVALIDITY**

Pursuant to Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1), Defendant L-3 Communications Avionics Systems, Inc. ("L-3") requests an order *in limine* precluding the testimony by Dr. Myron Kayton, or any other fact or "expert" witness on behalf of Plaintiff Avidyne Corp. ("Avidyne"), as to the alleged obviousness of any claim of U.S. Patent No. 5,841,018 ("the '018 patent") under 35 U.S.C. §101, as well as to the alleged invalidity of any claim of the '018 patent under 35 U.S.C. §112.

Alternatively, L-3 seeks an order precluding Avidyne from introducing any evidence relating to (1) differences between the claimed methods of the '018 patent and the cited references, (2) a reasonable expectation of success at arriving at the claimed methods of the '018 patent, (3) how the cited prior art references could be combined to arrive at the methods claimed in the '018 patent, (4) the motivation of a skilled artisan to combine the prior art references, and (5) any alleged lack of enablement or indefiniteness of any claims of the '018 patent.

The objective of Federal Rule of Civil Procedure 26 is to promote proper adjudication and protect parties from responding to hidden legal theories and facts. Rule 26 thus serves to "increase[] the quality of trials by better preparing attorneys for cross-examination, minimizing surprise, and supplying a helpful focus for the court's supervision of the judicial process." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (citations omitted). To this end, disclosure pursuant to Rule 26(a)(2) of experts and the topics about which they are proffered to opine "is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting Rule 26(a)(2) advisory committee note (1993)).

It is well-settled that experts may not present opinions at trial that were not properly and timely disclosed pursuant to Rule 26 (a)(2)(B), which mandates that an expert witness report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Rule 37(c)(1) further provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a)…is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."

Courts are entrusted with broad discretion in determining whether exclusion of proffered testimony under Rule 37 is appropriate to ensure compliance with Rule 26(a). "It is quite true that as amended, the civil procedure rules make clear that exclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)." *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 305 (1st Cir. 1999) (citations omitted).

## I. DR. KAYTON

Avidyne's expert, Dr. Myron Kayton, submitted an expert report entitled "Initial Expert Report of Myron Kayton," which provided certain opinions with regard to anticipation and obviousness of the '018 patent.[1] (DX105). As discussed below, however, that report does not make out a prima facie case of obviousness as it merely rests on the completely conclusory statement that the inventive method disclosed in the '018 patent would have been obvious. Dr. Kayton failed to set forth any evidence to support Avidyne's burden to (1) identify differences between the cited prior art references and the claimed methods of the '018 patent (2) prove the prior art patents he cites would have created a reasonable expectation of success of creating the claimed methods of the '018 patent, (3) show how any of the prior art patents could have been modified to arrive at the claimed methods, and (4) establish a motivation to combine the cited prior art patents that would have led a person of skill in the art to arrive at the claimed methods of the '018 patent.

The entirety of Dr. Kayton's obviousness analysis is contained in a single paragraph on the last page of the report of DX 105 as follows:

> The four prior-art patents address the same problem as Watson addressed and disclose identical solutions. The fact that these four groups of engineers and the Avidyne engineers came up with the same solutions means that the method claimed in the Watson patent would have been obvious to skilled practitioners in the inertial navigation art at the time the patent was filed in 1996. There is no gap between the teachings of the prior art and the claims of the Watson patent that would require an appreciable level of skill to bridge. The prior art would have been obvious to skilled practitioners in 1996.

(DX 105, pg. 10).

---

[1] Dr. Kayton's opinions concerning invalidity are the subject of a separate motion filed by L-3 in which the significant differences between the references he cites and the claims of the '018 patent are addressed.

Dr. Kayton was subsequently deposed with regard to his report of DX 105, which he testified was a complete statement of all of his opinions. (DX207, pgs.16-17). With regard to obviousness, Dr. Kayton testified as follows:

> Q: Dr. Kayton, what is your understanding of what it means for a patent claim to be obvious?
>
> A: Again, as an engineer – I can't speak as a lawyer – as an engineer it means that a person of skill in the business would have done the same thing; some other person of skill in the business would have done the same thing.
>
>     *   *   *
>
> Q: …So in terms of your legal knowledge of anticipation and obviousness, do you consider that you have the ability to speak from a legal sense as to what's anticipated or what's obvious?
>
> A: From an engineering sense, not from a legal sense.

(DX207, pgs. 20 and 22). Dr. Kayton was also questioned on the above noted paragraph regarding obviousness from his report:

> Q: And if you refer back to Page 10, which is the final page, the first sentence of that paragraph similarly states: "The four prior art patents addressed the same problem as Watson addressed and disclose identical solutions"; correct?
>
> A: Yes, sir.
>
> Q: So it is your opinion that there are no differences between the methods disclosed in the Watson '018 patent and each of the four prior art patents referenced in your report?
>
> A: There might be tiny – there might be small differences, but the objective and the method of doing it are the same.
>
> Q: And in your report you stated that they were identical solutions; correct?
>
> A: Yes.
>
> Q: Your report does not identify any differences, does it?
>
> A: Indirectly it does, but I did not actually make a list of differences between the four patents and Watson. They're so close the differences are insig – are very insignificant.

4

> Q: So continuing on Page 10, there's a statement there at the bottom: "There is no gap between the teachings of the prior art and the claims of the Watson patent that would require an appreciable level of skill to bridge."
>
> A: Yes.
>
> Q: And as you just stated, you didn't identify any specific differences in your report; correct?
>
> A: That's correct.
>
> Q: So that last sentence of that paragraph on Page 10: "The prior art would have been obvious to skilled practitioners in 1996." That's more just a statement; correct?
>
>     Mr. Scofield: Objection
>
> A: Well, it's my belief. I was in that industry long before 1996, and it's my belief as to what I think would have happened in 1996.

(DX207, pgs. 23-25).

Contrary to Dr. Kayton's subjective, cursory guess as to what possibly "would have happened," a proper obviousness analysis is an objective inquiry involving: (1) a determination of the scope and content of the prior art; (2) ascertaining the differences between the prior art and the claims at issue, and; (3) identifying the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 38 U.S. 1, 17 (1966). "Against this background the obviousness or nonobviousness of the subject matter is to be determined." *Id.* Patent claims are obvious only if the differences between the subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. 35 U.S.C. §103(a).

The deficiencies of Dr. Kayton's report are nearly identical to those in a report by an expert witness that was precluded by another district court from testifying at trial about obviousness, which decision was upheld by the Court of Appeals for the Federal Circuit in

*Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363 (Fed. Cir. 2008).  In *Innogenetics*, "[t]he district court had determined that the report was insufficient to support a jury finding of obviousness and thus failed the requirements of Federal Rule of Civil Procedure 26(a)." *Id.* at 1372.  The Federal Circuit held that "[t]he district court did not err in finding that [the expert's] report on the alleged obviousness of the asserted claims…was deficient for purposes of disclosure under Rule 26," noting that the expert's report merely "concludes with the stock phrase 'to one skilled in the art it would have been obvious to perform the genotyping method in [claims] of the [asserted patent].'"  *Id.* 1373.

    As stated by the Federal Circuit: "'[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Id.* (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006), and citing *KSR Int.'l Co. v. Teleflex, Inc.*, 550 U.S. 398 ("To facilitate review, this analysis should be made explicit.")).  In the instant matter, Dr. Kayton's report makes no reference to any form of combination of cited references.  *Innogenetics*, 512 F.3d at 1373 ("Nowhere does [the accused infringer's expert witness] state how or why a person ordinarily skilled in the art would have found the claims of the [asserted patent] obvious in light of some combination of those particular references.")   The Federal Circuit in *Innogenetics* also acknowledged the district court's finding that the expert had failed to identify any differences between the cited references and the asserted patent, which deficiency is shared by Dr. Kayton's report in this matter.  *Id.* ("'It is not credible to think that a lay jury could examine the…prior art or any of the other references and determine on its own whether there were differences among them and the [asserted patent].'")  As summarized by the Federal Circuit, "[s]uch vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness." *Id.* citing *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966).

Dr. Kayton's report fails to identify any differences between the cited references and the claims of the '018 patent, fails to identify any combinations of references that allegedly render any specific claims of the '018 patent obvious, or how or why a person of skill in the art would have considered any such unidentified combinations to render specific claims obvious. Dr. Kayton has an insufficient understanding of what is meant and required to render patent claims obvious, and instead reported his subjective guess about what "would have happened." Thus, Dr. Kayton must be precluded from testifying with regard to obviousness.

## II. AVIDYNE

Similar to the deficiencies with Dr. Kayton's report, Avidyne failed to set forth any position regarding invalidity other than to argue independent Claims 1 and 16 were anticipated in view of four references.[2]

L-3 served an interrogatory requesting that Avidyne:

> …describe on a claim-by-claim basis all factual and legal basis for any contention that the patent in suit is invalid, the description including without limitation identification of all prior art and documents relied upon by Plaintiff relative to said contention, and on a claim limitation-by-limitation basis, the manner in which the disclosure of said prior art anticipates and/or renders obvious each claim thereof.

(DX209, Pltf's Resp. to Interrog. No. 12). Avidyne identified four separate patents in response, but only alleged that each of the references separately anticipated just independent Claims 1 and 16. Avidyne's response was by way of the charts in DX209. As there shown, each patent is separately discussed with respect to the independent claims, but no discussion is made identifying differences between the references and Claims 1 or 16, nor is there any identification of any combinations of references that allegedly render any specific claims of the '018 patent obvious, or how or why a person of skill in the art would have considered any such unidentified

---

[2] Those references were (1) U.S. Pat. No. 3,782,167 to Stuelpnagel; (2) U.S. Pat. No. 4,303,978 to Shaw; (3) U.S. Pat. No. 5,245,909 to Corrigan, and; (4) U.S. Pat. No. 5,305,236 to Germanetti.

7

combinations to render specific claims obvious. Avidyne's response is simply devoid of any allegation related to obviousness.

As also noted, no discussion was made with regard to any of the dependent claims. Avidyne's response in DX209 was served on January 28, 2010 and claimed that L-3 had not yet identified what claims of the '018 patent L-3 alleged were infringed. This was not true. Attached as exhibit DX205 is L-3's January 18, 2010 supplemental response to Avidyne's interrogatory requesting L-3 to identify the claims it alleged to be infringed, which supplemental response identified Claims 1-14, 16-18 and 20 as infringed and provided a detailed analysis as to L-3's allegations. L-3 even supplemented that response further as discovery continued. Avidyne, however, never supplemented its response of DX209.

Avidyne, therefore, cannot now present arguments as to (1) the alleged invalidity due to obviousness of any of the '018 patent claims, or (2) the alleged invalidity of any of the dependent claims of the '018 patent for any basis.[3] See *SPC Corp. v. Bartec USA, LLC*, 574 F.Supp2d 748, 755-56 (E.D.Mich. 2008) (overruling objections to magistrate judge's order granting patent owner's motion to exclude evidence based on accused infringer's failure to timely supplement interrogatory response identifying invalidity contentions); *Contech Stormwater Solutions, Inc. v. Baysaver Technologies, Inc.*, 534 F.Supp.2d 616, 624-25 (granting patent owner summary judgment of validity based on accused infringer's failure to timely disclose underlying basis for invalidity claims and prior art, and failure to supplement bare boned initial interrogatory response).

---

[3] Dr. Kayton's report of DX105 purports to set forth a claim-by-claim invalidity analysis with regard to anticipation. Subject to L-3's correspondingly filed summary judgment motion regarding invalidity, Avidyne's defenses must be limited to the arguments it has presented by way of Avidyne's interrogatory response with regard to Claims 1 and 16 and Dr. Kayton's report.

8

### III. INVALIDITY UNDER 35 U.S.C. §112

Avidyne's Second Affirmative Defense in its Reply to Counterclaim (Doc. No. 8) included an allegation that the '018 patent was invalid under 35 U.S.C. §112, which relates to arguments of lack of enablement and indefiniteness.

L-3's request during discovery that Avidyne disclose all alleged basis for all of its defenses included any affirmative defense of an alleged failure to comply with §112. Avidyne however, never identified the basis for any defense under §112, or even what part of that section has purportedly not been complied with. As noted, L-3 served an interrogatory requesting that Avidyne:

> …describe on a claim-by-claim basis all factual and legal basis for any contention that the patent in suit is invalid….

(DX209). Avidyne never mentioned §112 in response to this interrogatory. (DX209). The report of Dr. Kayton is likewise completely silent on the subject of §112. (DX105). The absence of any basis whatsoever for alleging invalidity under §112 mandates the preclusion of any testimony thereon. *See, eg, Johns Hopkins University v. Cellpro, Inc.,* 152 F.3d 1342, 1359-62 (Fed. Cir. 1998) (granting summary judgment dismissing §112 defenses.)

### IV. CONCLUSION

For the foregoing reasons, Dr. Myron Kayton and any other potential fact or "expert" witnesses on behalf of Avidyne must be precluded from testifying as to the alleged invalidity of any claims of the '018 patent under 35 U.S.C. §103 and §112.

Defendant L-3 Communications Avionics Systems, Inc.

By their Attorneys,

/s/ Karl T. Ondersma
_____

Terence J. Linn (P33449)
Karl T. Ondersma (P68028)
**Gardner, Linn, Burkhart & Flory LLP**
2851 Charlevoix Drive SE, Suite 207
Grand Rapids, MI  49546
(616) 975-5500
linn@glbf.com
ondersma@glbf.com

Daniel G. Skrip, BBO No. 629784
**Pierce, Davis & Perritano, LLP**
90 Canal Street, 4th Floor
Boston, Massachusetts  02114-2018
(617) 350-0950

**CERTIFICATE OF SERVICE**

I, Daniel G. Skrip, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 13, 2011

 /s/ Daniel G. Skrip
Daniel G. Skrip