UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11098-GAO

AVIDYNE CORPORATION, a Delaware corporation,
Plaintiff,

v.

L-3 COMMUNICATIONS AVIONICS SYSTEMS, INC., f/k/a B.F. GOODRICH AVIONICS
SYSTEMS, INC., a Delaware corporation,
Defendants.

ORDER
March 29, 2012

O'TOOLE, D.J.

This Order resolves several pending motions.

A.  Avidyne's Motion for Partial Summary Judgment of Noninfringement Prior to December 14, 2004 (Dkt. No. 80)

Avidyne Corporation argues that, before December 14, 2004, the date when L-3 Communications Avionics Systems, Inc., sent Avidyne a cease and desist letter, Avidyne lacked the knowledge necessary for a claim of contributory patent infringement or inducement of infringement. It argues that partial summary judgment is therefore appropriate as to such claims of inducement and contributory infringement before that date.

A patent owner must prove the defendant's knowledge of the infringed patent to prove indirect infringement by inducement or contribution. Global-Tech Appliances, Inc. v. SEB S.A., --- U.S. ----, 131 S.Ct. 2060, 2068 (2011) (inducement); Fujitsu Ltd. v. Netgear, Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010) (contributory infringement). The owner need not, however, prove such knowledge to prove direct infringement. Global-Tech, 131 S.Ct. at 2065 n.2.

In its response to Avidyne's motion, L-3 effectively concedes it cannot prove that Avidyne had the requisite knowledge to sustain a claim of indirect infringement for any period prior to its receipt of the cease and desist letter on December 14, 2004, but it argues that there is evidence from which a jury could conclude that Avidyne *directly* infringed prior to that date. L-3's argument is that Avidyne's work with its customer, Cirrus Design Corp., amounted to sufficient direction and control by Avidyne over Cirrus's work to make Avidyne directly liable for Cirrus's infringement, and presents facts that plausibly could support such a claim. (See, e.g., Crawford Dep. DX213, at 19, 53-54.) The matter is best resolved on a full evidentiary record by a jury.

Accordingly, Avidyne's motion for partial summary judgment is GRANTED to the extent that it seeks to bar L-3's claims of inducement of infringement and contributory infringement prior to December 14, 2004, but is otherwise DENIED with respect to L-3's claims of direct infringement in that time period.

> B.  Avidyne's Motion for Partial Summary Judgment to Deny Lost Profits Damages (Dkt. No. 83)

Avidyne seeks partial summary judgment to bar L-3's claim for lost profits damages. Whether lost profits are categorically recoverable is a question of law for the court, not a jury. Poly-Am., L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303, 1311 (Fed. Cir. 2004). "Only after the court has decided, as a matter of law, that lost profits are available does the jury then get to determine the amount of those lost profits." Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293 (Fed. Cir. 2007) (citing Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1373 (Fed. Cir. 2003)).

To recover lost profits damages, the patentee must show "causation in fact," that is, a reasonable probability that the patentee would have made additional profits "but for" the alleged infringement. Wechsler, 486 F.3d at 1293; Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). As a general rule, "if the patentee is not selling a product, by definition there can be no lost profits." Wechsler, 56 F.3d at 1293 (internal citations and quotations omitted). However, even where a patentee is not yet manufacturing the product, lost profits may be available "where the patentee has the ability to manufacture and market a product, but for some legitimate reason does not." Id.

It is undisputed that during the period of Avidyne's alleged infringement L-3 did not have a commercially marketable device that practiced the method(s) claimed in the '018 patent. L-3's position is that, had it not been for Avidyne's infringement, it *would have* developed a successful device in connection with a relationship with Cirrus that it *would have* sold profitably. It points out that it eventually did develop its SmartDeck product and contends that it could have done so sooner, within the period of alleged infringement, if Avidyne had not infringed.

Evidence of a later ability to manufacture and sell a device is relevant to the question whether L-3 could and would have sold such a device earlier but for an infringer's interference, but only where such evidence demonstrates that the patentee not only *could* have sold the device, but likely *would* have done so. See Wechsler, 486 F.3d at 1294. The evidence in the summary judgment record is too weak to justify that inference.

L-3 argues that when Cirrus was interested in obtaining a cockpit device of the type at issue here, there were only two plausible sources, itself[1] and Avidyne. Its argument is that if Avidyne did not contract with Cirrus, it would have done so, and it further suggests that it is

---

[1] Actually, a predecessor, B.F. Goodrich Avionics. For convenience, the text refers only to L-3.

reasonable to conclude that its development of the Cirrus product would have generally followed the same course as Avidyne's, and it therefore would have earned profits.

There are several problems with this argument. First, when in 2001 Cirrus was looking for a development partner, Avidyne bid for the contract but apparently L-3 did not. (Avidyne asserts this fact and L-3, given the opportunity, did not deny it.) Moreover, the record indicates that L-3's product development efforts with other partners did not go well. L-3 blames others for this, and that may be correct. But the lack of success in those respects nevertheless points up the uncertainties that the development process can entail. There is also evidence in the record that L-3's development project suffered from a lack of adequate support from its corporate parent. (See Avidyne's Mem. in Supp. of Mot. for Partial Summ. J. Ex. F, at 3-4 (Schafer Email) (dkt. no. 84); Id. Ex. G, at 158-159 (Dep. of Stevens) (dkt. no. 84); Avidyne's Reply 1-2 (dkt. no. 121).)

All of these factors combine to raise substantial doubt as to whether L-3's suggested alternative universe would actually have come into being. *Maybe* if Avidyne's interfering infringement that is alleged had not occurred, L-3 would have succeeded in developing and selling a commercial product within the relevant time period, but merely showing that that might have happened is not enough to take the matter from the realm of speculation into the realm of the reasonably probable.

Accordingly, Avidyne's motion for partial summary judgment to deny lost profits damages is GRANTED.

C.   L-3's Motion for Summary Judgment that the '018 Patent is Not Invalid (Dkt. No. 96)

L-3 seeks summary judgment to establish that the '018 Patent was not invalid under 35 U.S.C. § 102, § 103, or § 112, and to dismiss Avidyne's assertions to the contrary.

*1. Anticipation: 35 U.S.C. § 102*

L-3 argues that Avidyne has provided no patent that anticipated the '018 patent and that Avidyne's assertions of anticipation under 35 U.S.C. § 102 therefore should be dismissed.

"Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc., 522 F.3d 1348, 1363 (Fed. Cir. 2008); see also Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1373, 1383 (Fed. Cir. 2011) (anticipation requires all elements in prior art be arranged as in the claimed invention). "Whether a prior art reference anticipates a patent claim is a question of fact." Trimed, Inc. v. Stryker Corp., 608 F.3d 1333, 1343 (Fed. Cir. 2010).

In the present case, a fact finder reasonably could conclude, to take one example, that the '018 Patent was anticipated by U.S. Patent No. 4,303,978 (the " '978 Patent"). Indeed, the '978 Patent determines an aircraft's attitude and achieves this result, one could find, through the elements as arranged in the '018 Patent. See '978 Patent 2:50-4:2; 103:27-104:38. Furthermore, the report of Avidyne's expert opines that the '978 Patent anticipated the '018 Patent. (See Initial Kayton Report Ex. D. 54, 57 (dkt. no. 140-1).) The question of anticipation is properly left to the jury.

*2.    Obviousness: 35 U.S.C. § 103*

Under 35 U.S.C. § 103, a patent claim is invalid where its subject matter would have been obvious to a person having ordinary skill in the art at the time of the invention. To determine obviousness, one considers factors including: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and

5

the prior art; and (4) objective evidence of nonobviousness." Eli Lilly & Co. v. Teva Pharms. USA, Inc., 619 F.3d 1329, 1336 (Fed. Cir. 2010).

Avidyne's expert, in his considerations of obviousness, addresses the first three factors and, in the end, the objective evidence of obviousness, namely, that at least four groups of engineers all arrived at the same solutions as the ones claimed in the '018 Patent. (Initial Kayton Report Ex. D 50-58 (dkt. no. 140-1).) There is a genuine dispute about the patent's obviousness. This is a matter appropriate for a jury to resolve.

    3.  *Indefiniteness: 35 U.S.C. § 112*

L-3 argues that Avidyne failed timely to disclose its intention to raise a defense of indefiniteness under 35 U.S.C. § 112 and that any such defense raised at this stage should be dismissed.

The relevant timeline is as follows. In November 2008, the Court issued its claim construction decision in this case. In January 2010, in response to L-3's interrogatories seeking Avidyne's bases for a claim of invalidity, Avidyne asserted anticipation and obviousness but did not assert indefiniteness as a basis. In November 2010, discovery in the case closed. In November 2011, Avidyne asserts indefiniteness as a basis of invalidity.

Avidyne does not sufficiently explain how recent submissions by L-3 indicated indefiniteness as a viable defense in this case while previous documents, such as the claim construction decision, did not. Absent such a showing, it is too late now for Avidyne to start fleshing out arguments which it did not mention over two years ago when specifically asked to provide the bases for its arguments on invalidity.

Accordingly, L-3's motion for summary judgment is GRANTED in so far as it bars Avidyne from asserting indefiniteness as a basis for invalidity under 35 U.S.C. § 112 and is otherwise DENIED.

### D.    L-3's Motion for Summary Judgment of Infringement (Dkt. No. 101)

L-3 seeks summary judgment that Avidyne infringed Claims 1-14, 16-18, and 20 in the '018 Patent. L-3 grounds its arguments on a faulty premise, namely, that Avidyne's "sole position regarding non-infringement is the assertion that its [Primary Flight Display] devices perform compensation processing in a different sequence than what Avidyne alleges to be required by independent Claims 1 and 16 of the '018 patent." (L-3 Mem. in Supp. of Mot. for Summ. J. 1 (dkt. no. 102).)

Avidyne's position, however, is quite different. It is not based on the <u>sequence</u> of the steps but, rather, on the <u>nature</u> of the steps. Avidyne has set forth evidence that, in the '018 Patent, (1) data is processed to determine a static orientation measurement, (2) data is processed to determine an attitude measurement, and (3) those two measurements are processed to obtain the desired attitude information. <u>See</u> '018 Patent 5:59-6:11. It has set forth evidence, furthermore, that Avidyne's product does not perform those acts, namely, that it does not process the data in steps (1) and (2) to determine the measurements described in those steps and, therefore, does not process the measurements as described in step (3). (<u>See, e.g.</u>, Second Kayton Report Ex. D 22-24 (dkt. no. 123-1).)

A reasonable fact finder thus could conclude that Avidyne did not infringe the '018 Patent directly or under the doctrine of equivalents. Accordingly, L-3's motion (dkt. no. 101) for summary judgment is DENIED.

E.  Conclusion

In sum, Avidyne's motion (dkt. no. 80) for partial summary judgment is GRANTED to the extent that it seeks to bar L-3's claims of indirect infringement by inducement and contributory infringement prior to December 14, 2004, and is otherwise DENIED. Avidyne's motion (dkt. no. 83) for partial summary judgment as to lost profits is GRANTED. L-3's motion (dkt. no. 96) for summary judgment is GRANTED in so far as it bars Avidyne from asserting indefiniteness as a basis for invalidity under 35 U.S.C. § 112 and is otherwise DENIED. L-3's motion (dkt. no. 101) for summary judgment of infringement is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge